IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | |
|---|---|
| BRUCE LEWIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:13-cv-00043 |
| | ) Senior Judge Haynes |
| PORTFOLIO RECOVERY ASSOCIATES, LLC, | ) |
| | ) |
| Defendant. | ) |

# MEMORANDUM

Plaintiff, Bruce Lewis, filed this action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 et al., and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692d, 1692d(5) and 1692(f) against the Defendant, Portfolio Recovery Associates, LLC ("PRA"). Plaintiff asserts that Defendant violated the TCPA and the FDCPA by repeatedly calling Plaintiff's home and cell telephones to collect a debt owed by Plaintiff's wife. Plaintiff seeks damages and attorneys' fees and costs. Parties stipulated to the dismissal of Plaintiff Linda Lewis from this action. (Docket Entry No. 25). Plaintiff filed an amended complaint and dismissed his claims under the TCPA. (Docket Entry No. 9).

Before the Court is Defendant's motion for summary judgment. (Docket Entry No. 29). Defendant contends, in sum: (1) that there is not any evidence that Defendant violated FDCPA §§ 1692 or 1692d(5); (2) that FDCPA § 1692f does not apply to telephone calls and Plaintiff's claim fails as a matter of law; (3) that Plaintiff cannot prove actual damages; and (4) that Plaintiff's claim is pursued in bad faith and Defendant is entitled to attorneys' fees. (Docket Entry No. 30).

In response, Plaintiff cites Defendant's multiple calls per day, including more than four calls on one day; Plaintiff contends these calls were unfair and unconscionable after Plaintiff stated he was unable to pay the debt; and such extreme and outrageous conduct caused Plaintiff stress and anxiety; Plaintiff asserts his good faith in pursuing this action despite one claim that lacked evidentiary support. (Docket Entry No. 34).

For the reasons set forth below, the Court concludes that Plaintiff lacks factual support for his claims. Thus, Defendant's motion for summary judgment should be granted.

### A. Findings of Fact[1]

PRA is a limited liability company headquartered in Virginia. (Docket Entry No. 10, Amended Answer at ¶ 7 ).[2] Part of PRA's business is the collection of its accounts. Id. On or around

July 13, 2008, Linda Lewis, Plaintiff's then-wife, opened a Wal-Mart credit card account with GE Money Bank. (Docket Entry No. 36, Response to Statement of Undisputed Facts at ¶ 17). On November 19, 2011, the $469.93 debt on that credit card was assigned to PRA. Id. at ¶¶ 18-19; Docket Entry No. 37-3, Affidavit of Trustan Temple at 5). On December 9, 2011, PRA began sending letters addressed to Linda Lewis at the home she shared with Plaintiff. (Docket Entry No.

---

[1]Upon a motion for summary judgment, the factual contentions are viewed in the light most favorable to the party opposing the motion for summary judgment. Duchon v. Cajon Co., 791 F.2d 43, 46 (6th Cir. 1986). As discussed infra, upon the filing of a motion for summary judgment, the opposing party must come forth with sufficient evidence to withstand a motion for directed verdict, Anderson v. Liberty Lobby, 477 U.S. 242, 247-52 (1986), particularly where there has been an opportunity for discovery. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The Court concludes that under the applicable law, there are not any material factual disputes. Thus, this section constitutes a finding of facts.

[2]The Court's citations are to the pagination in the Court's electronic case filing system. The Court's citations denoted by a "p." refer to the pagination of a deposition.

37-3 at 24-29). On December 20, 2011, PRA began making telephone calls to numbers registered to Plaintiff and Linda Lewis regarding the debt. Id. at ¶ 13 and 30-32.

Plaintiff does not have any records of the telephone calls made by Defendant. Plaintiff stated that both his home telephone provider and his cell phone carrier informed him that he would need a subpoena to obtain his call records. (Docket Entry No. 31-1, Lewis Deposition, at pp.30-31). Plaintiff does not present any evidence regarding the number of telephone calls placed by PRA. Plaintiff testified that PRA called "nonstop," "back to back," and "like every hour on the hour." Id. at p.24, p.47, p.28.

Plaintiff's home telephone number is (931) 223-8528 ("the 8528 number"). (Docket Entry No. 36 at ¶ 10). Plaintiff shared this phone number with Linda Lewis. (Docket Entry No. 31-1, at p.27). According to Defendant's records, the 8528 number was called twenty-seven times between December 20, 2011 and September 4, 2012. (Docket Entry No. 37-3 at 30-32). Plaintiff's cell phone number is (918) 815-9108 ("the 9108 number"). (Docket Entry No. 36 at ¶ 11). Defendant's records do not show any calls to this number. (Docket Entry No. 37-3 at 30-32). Plaintiff's previous home telephone number was (918) 286-6256 ("the 6256 number"), but Plaintiff admits that his claim is not based on calls to this number. (Docket Entry No. 36 at ¶¶ 12, 16). The 6256 number was called fifty-two times between December 20, 2011 and September 4, 2012. (Docket Entry No. 31-1 at 30-32). At a previous place of employment, Plaintiff's work phone number was (918) 449-1149 ("the 1149 number"), but Plaintiff admits that his claim is not based on calls to this number. (Docket Entry No. 36 at ¶¶ 13, 16). The 1149 number was called seventy-six times between December 20, 2011 and September 4, 2012. (Docket Entry No. 37-3 at 30-32).

According to Defendant's records, only two calls were answered. Id. at ¶ 15. The first, on

3

January 18, 2012, was answered by a "third party" but the summary stated, "no message." Id. at 30. The second, on April 20, 2012, was answered by a "third party" and was a "wrong number." Id. at 31. Plaintiff contends that during the first of these calls, Plaintiff and PRA established a payment plan for the debt. (Docket Entry No. 31-1 at pp.48-51). According to Plaintiff, he "explained the situation, that [he] was out of work and [he's] getting back on [his] feet and [he'll] take and pay the deal." Id. at p.50. Specifically, Plaintiff told the PRA representative that he would make a fifty dollar monthly payment through his bank. Id. at p.49, p.51. The PRA representative "was agreeable to it, and that's how the whole thing transpired." Id. at p.50. Plaintiff did not receive written confirmation of the payment plan. Id. at p.49. Plaintiff contends that he made this payment in February, but that within a week PRA began calling again. Id. at p.48, p.51. Plaintiff did not make any other payments. Id. at p.51.

Plaintiff contends that the harassing phone calls from PRA began in February 2012. Id. at p.28. At first, PRA called "in the morning, they'd call in the afternoon, and they'd call in the evening." Id. Later, PRA called "like literally on the hour." Id.

In his response to Defendant's statement of undisputed material facts, Plaintiff admits that "Plaintiff's claims are based solely upon alleged phone calls to the 8528 number and the 9108 number." (Docket Entry No. 36 at ¶ 16). According to Defendant's records, after May 1, 2012, Defendant did not place any calls to the 9108 number and placed nineteen calls to the 8528 number. (Docket Entry No. 37-3 at 30-32). On four occasions, Defendant called the 8528 number twice in one day. Id. On two of these occasions, Defendant called the 8528 number after 9:00pm. Id.

Plaintiff engaged counsel, and on August 30, 2012, Plaintiff sent a cease and desist order to PRA. (Docket Entry No. 37-3 at 33-35). This letter was marked as received by PRA on September

4, 2012. Id. at 33. According to Defendant's records, the final call placed to any of Defendant's telephone numbers was on September 4, 2012. Id. at 32.

**B. Conclusions of Law**

"The very mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Fed. R. Civ. P. 56 advisory committee notes. Moreover, "district courts are widely acknowledged to possess the power to enter summary judgments sua sponte, so long as the losing party was on notice that [he] had to come forward with all of [his] evidence." Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986); accord Routman v. Automatic Data Processing, Inc., 873 F.2d 970, 971 (6th Cir. 1989).

In Anderson v. Liberty Lobby, Inc., the United States Supreme Court explained the nature of a motion for summary judgment:

> Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.
>
> As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.

477 U.S. at 247-48 (emphasis in original). Earlier the Supreme Court defined a material fact for Rule 56 purposes as "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Electrical Indus. Co. v.

Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citations omitted).

A motion for summary judgment is to be considered after adequate time for discovery. Celotex, 477 U.S. at 326 (1986). Where there has been a reasonable opportunity for discovery, the party opposing the motion must make an affirmative showing of the need for additional discovery after the filing of a motion for summary judgment. Emmons v. McLaughlin, 874 F.2d 351, 355-57 (6th Cir. 1989). But see Routman, 873 F.2d at 971.

There is a certain framework in considering a summary judgment motion as to the required showing of the respective parties, as described by the Court in Celotex:

> Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. . . . [W]e find no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim.

Celotex, 477 U.S. at 323 (emphasis deleted).

As the Court of Appeals explained, "[t]he moving party bears the burden of satisfying Rule 56(c) standards." Martin v. Kelley, 803 F.2d 236, 239 n. 4 (6th Cir. 1986). The moving party's burden is to show "clearly and convincingly" the absence of any genuine issues of material fact. Sims v. Memphis Processors, Inc., 926 F.2d 524, 526 (6th Cir. 1991)(quoting Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986)). "So long as the movant has met its initial burden of 'demonstrat[ing] the absence of a genuine issue of material fact,' the nonmoving party then 'must set forth specific facts showing that there is a genuine issue for trial.'" Emmons, 874 F.2d at 353 (quoting Celotex, 477 U.S. at 323 and Rule 56(e)).

Once the moving party meets its initial burden, the United States Court of Appeals for the

Sixth Circuit warned that "the respondent must adduce more than a scintilla of evidence to overcome the motion [and]. . . must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989)(quoting Liberty Lobby). Moreover, the Court of Appeals explained that:

> The respondent must "do more than simply show that there is some metaphysical doubt as to the material facts." Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is "implausible."

Street, 886 F.2d at 1480 (citations omitted). See also Hutt v. Gibson Fiber Glass Products, 914 F.2d 790, 792 (6th Cir. 1990) ("A court deciding a motion for summary judgment must determine 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'") (quoting Liberty Lobby).

If both parties make their respective showings, the Court then determines if the material factual dispute is genuine, applying the governing law.

> More important for present purposes, summary judgment will not lie if the dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.
>
> ....
>
> Progressing to the specific issue in this case, we are convinced that the inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits. If the defendant in a run-of-the-mill civil case moves for summary judgment or for a directed verdict based on the lack of proof of a material fact, the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the

7

evidence that the plaintiff is entitled to a verdict – "whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the <u>onus</u> of proof is imposed."

<u>Liberty Lobby</u>, 477 U.S. at 248, 252 (citation omitted).

It is likewise true that:

> In ruling on [a] motion for summary judgment, the court must construe the evidence in its most favorable light in favor of the party opposing the motion and against the movant. Further, the papers supporting the movant are closely scrutinized, whereas the opponent's are indulgently treated. It has been stated that: "The purpose of the hearing on the motion for such a judgment is not to resolve factual issues. It is to determine whether there is any genuine issue of material fact in dispute. . . ."

<u>Bohn Aluminum & Brass Corp. v. Storm King Corp.</u>, 303 F.2d 425, 427 (6th Cir. 1962) (citation omitted). As the Court of Appeals stated, "[a]ll facts and inferences to be drawn therefrom must be read in a light most favorable to the party opposing the motion." <u>Duchon v. Cajon Co.</u>, 791 F.2d 43, 46 (6th Cir. 1986).

The Sixth Circuit further explained the District Court's role in evaluating the proof on a summary judgment motion:

> A district court is not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim. Rule 56 contemplates a limited marshalling of evidence by the nonmoving party sufficient to establish a genuine issue of material fact for trial. This marshalling of evidence, however, does not require the nonmoving party to "designate" facts by citing specific page numbers. Designate means simply "to point out the location of." <u>Webster's Third New InterNational Dictionary</u> (1986).

> Of course, the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the nonmoving party relies; but that need for specificity must be balanced against a party's need to be fairly apprised of how much specificity the district court requires. This notice can be adequately accomplished through a local court rule or a pretrial order.

InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989). Here, the parties have given some references to the proof upon which they rely. Local Rules 56.01(b)-(d) require a showing of undisputed and disputed facts.

In Street, the Court of Appeals discussed the trilogy of leading Supreme Court decisions, and other authorities on summary judgment and synthesized ten rules in the "new era" on summary judgment motions:

    1. Complex cases are not necessarily inappropriate for summary judgment.

    2. Cases involving state of mind issues are not necessarily inappropriate for summary judgment.

    3. The movant must meet the initial burden of showing "the absence of a genuine issue of material fact" as to an essential element of the non-movant's case.

    4. This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.

    5. A court should apply a federal directed verdict standard in ruling on a motion for summary judgment. The inquiry on a summary judgment motion or a directed verdict motion is the same: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."

    6. As on federal directed verdict motions, the "scintilla rule" applies, i.e., the respondent must adduce more than a scintilla of evidence to overcome the motion.

    7. The substantive law governing the case will determine what issues of fact are material, and any heightened burden of proof required by the substantive law for an element of the respondent's case, such as proof by clear and convincing evidence, must be satisfied by the respondent.

    8. The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must "present affirmative evidence in order to defeat a properly supported motion for summary judgment."

    9. The trial court no longer has the duty to search the entire record to establish that

it is bereft of a genuine issue of material fact.

10. The trial court has more discretion than in the "old era" in evaluating the respondent's evidence. The respondent must "do more than simply show that there is some metaphysical doubt as to the material facts." Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is "implausible."

Street, 886 F.2d at 1479-80 (citations omitted).

The Court has distilled from these collective holdings four issues that are to be addressed upon a motion for summary judgment: (1) whether the moving party has "clearly and convincingly" established the absence of material facts; (2) if so, whether the plaintiff has presented sufficient facts to establish all the elements of the asserted claim or defense; (3) if factual support is presented by the nonmoving party, whether those facts are sufficiently plausible to support a jury verdict or judgment under the applicable law; and (4) whether there are any genuine factual issues with respect to those material facts under the governing law.

"To state a claim under the FDCPA, a plaintiff must show that a defendant violated one of the substantive provisions of the FDCPA while engaging in debt collection activity." Clark v. Lender Processing Servs., 562 F. App'x 460, 465-66 (6th Cir. 2014) (citing Glazer v. Chase Home Fin. LLC, 704 F.3d 453, 459-60 (6th Cir. 2013)). A "debt collector" is defined in 15 U.S.C. § 1692a(6). In his amended complaint, Plaintiff alleges that Defendant is a debt collector as defined in § 1692a(6). (Docket Entry No. 9 at ¶ 8). In its amended answer, Defendant responds that "Defendant is without sufficient knowledge or information to admit or deny whether it was a 'debt collector' with respect to Plaintiffs, and therefore denies the same and demands strict proof thereof." (Docket Entry No. 10 at ¶ 8). Yet, Defendant does not raise this argument in its motions. Therefore,

the Court considers Defendant to be a debt collector for purposes of the FDCPA.

Plaintiff's FDPCA claims are that: (1) Defendant called Plaintiff repeatedly and continuously and engaged in "other harassing or abusive conduct" in violation of 15 U.S.C. § 1692d; (2) Defendant violated 15 U.S.C. § 1692d(5) by causing Plaintiff's home and cellular telephones to ring repeatedly and continuously with the intent to harass or annoy Plaintiff; and (3) Defendant violated 15 U.S.C. § 1692f by continuing to call Plaintiff after Plaintiff stated that he could not afford the monthly payment. The FDCPA is a strict liability statute. Gillie v. Law Office of Eric A. Jones, LLC, 785 F.3d 1091, 1108 (6th Cir. 2015) (quoting Fed. Home Loan Mortg. Corp. v. Lamar, 503 F.3d 504, 513 (6th Cir. 2007)). Therefore, if Plaintiff's proof establishes a violation of the FDCPA, summary judgment for Defendant is inappropriate.

Plaintiff filed this action on May 1, 2013. (Docket Entry No. 1, Complaint). The FDCPA provides a one-year statute of limitations. 15 U.S.C. § 1692k(d). Accordingly, although Defendant's records of phone calls to Plaintiff begin on December 20, 2011, only calls placed on or after May 1, 2012 will be considered by the Court. "A plaintiff who alleges several FDCPA violations, some of which occurred within the limitations period and some of which occurred outside that window, will be barred from seeking relief for the untimely violations, but that plaintiff may continue to seek relief for those violations that occurred within the limitations period." Slorp v. Lerner, Sampson & Rothfuss, 587 F. App'x 249, 259 (6th Cir. 2014).

Plaintiff's claim is based solely on calls to the 8528 and 9108 numbers. (Docket Entry No. 36 at ¶ 16). According to Defendant's records, Plaintiff's home telephone number, the 8528 number, was called nineteen times after May 1, 2012. (Docket Entry No. 37-3 at 32). Plaintiff's cell phone number, the 9108 number, was never called by Defendant. (Docket Entry No. 37-3 at 30-32). Four

11

times after May 1, 2012, Defendant called the 8528 number twice in one day. Id. On two of these occasions, Defendant called the 8528 number after 9:00pm. Id. Yet, Plaintiff stated that he "does not make any claims regarding calls prior to 8:00am or after 9:00pm." (Docket Entry No. 36 at ¶ 36).

Plaintiff contends that Defendant violated FDCPA §§ 1692d and 1692d(5) that provide:

A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

(5) Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number.

Defendant called Plaintiff only nineteen times after May 1, 2012. (Docket Entry No. 37-3 at 30-32). Although Plaintiff disagrees "wholeheartedly" with Defendant's phone records, Plaintiff does not offer any records of his own. (Docket Entry No. 31-1 at p.77). Yet, even if Defendant called Plaintiff more frequently than reported, "the volume of calls alone does not establish a violation of § 1692d(5). Plaintiff must offer evidence beyond the mere number of calls to support [his] allegation that the telephone calls were harassing, oppressive, or abusive." Daniel v. West Asset Mgmt., 2011 WL 5142980, at *4 (E.D. Mich. Oct. 28, 2011) (citation omitted).

When considering §§ 1692d and 1692d(5) claims, "[c]ourts have followed the Federal Trade Commission's interpretations, finding that the term 'repeatedly' means calling with excessive frequency under the circumstances, and that 'continuously' means making a series of calls, one right after the other." Hicks v. America's Recovery Solutions, LLC, 816 F.Supp.2d 509, 515 (N.D. Ohio 2011) (internal quotations omitted). Although Defendant called the 8528 number up to twice a day,

these calls were never one right after the other. Further, a total of nineteen calls in four months is not excessive. See Bancroft v. Afni Inc., 2013 WL 3791465, at *4 (N.D. Ohio July 19, 2013) ("Daily calls do not raise an issue of fact as to harassment."). Plaintiff admitted that he felt the number of calls, alone, constituted harassment. (Docket Entry No. 31-1 at p.28 and p.47). Plaintiff does not identify any other complaints about Defendant. Id. at p.55. Plaintiff asserts that Defendant was "not friendly," but admitted that Defendant was not rude, never threatened Plaintiff – except with a lawsuit for collection of the debt – and never swore at Plaintiff. (Docket Entry No. 36 at ¶ 37). Further, after receiving Plaintiff's cease and desist letter, the Defendant stopped contacting Plaintiff. (Docket Entry No. 37-3 at 32-34). "While it is clear that the telephone calls made to the Plaintiff were unwelcome, that is simply insufficient to establish a violation of the FDCPA." Durthaler v. Accounts Receivable Mgmt., Inc., 854 F.Supp.2d 485, 492 (S.D. Ohio 2012). Plaintiff cannot prove that Defendant's calls were placed with an intent to annoy, abuse or harass Plaintiff under § 1692d(5). Likewise, Plaintiff cannot prove that Defendant's calls had the "natural consequence" of harassing, oppressing, or abusing Plaintiff under § 1692d.

Plaintiff's next claim is that Defendant violated § 1692f by repeatedly calling Plaintiff, and by continuing to call after Plaintiff stated that he could not pay the debt. FDCPA § 1692f provides that a "debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." This section "has been described as a 'backdrop' in the statute, intended to cover actionable debt collection practices that may not be expressly addressed in Sections 1692d and 1692e." Williams v. Javitch, Block & Rathbone, LLP, 480 F.Supp.2d 1016, 1023 (S.D. Ohio 2007).

Plaintiff contends that he repeatedly told Defendant he could not afford to pay the debt. Yet Plaintiff had only two conversations with Defendant and on other occasions, Plaintiff did not answer

Defendant's calls. (Docket Entry No. 31-1 at p.48 and p.54). Defendant's records also show two answered calls. (Docket Entry No. 37-3 at 30-32). During the first call, Plaintiff negotiated a payment plan of fifty dollars per month. (Docket Entry No. 31-1 at p.49). During the second call, Defendant requested full payment. Id. at p.52. Plaintiff told Defendant "what they needed to do," and that Plaintiff would "be contacting an attorney." Id. at p.54.

In his amended complaint, Plaintiff states that he "repeatedly explained to collectors that [he] could not afford the demanded payment plan." (Docket Entry No. 9 at ¶ 16). Yet, Plaintiff admitted that he did not make this statement to Defendant "repeatedly," as he had only one such conversation. (Docket Entry No. 31-1 at p.72). In any event, Plaintiff insists that he repeatedly told the Defendant during this one conversation that he could not pay the debt. This conduct is not evidence of harassment. "The fact that Defendant continued to call the [number] despite Plaintiff's challenge to the underlying basis of the debt, and stated unwillingness to pay the debt, does not demonstrate an intent to harass[.]" Newton v. Portfolio Recovery Assoc., LLC, 2014 WL 340414, at *5 (S.D. Ohio Jan. 30, 2014). Even if Plaintiff had orally told the Defendant to stop calling, "the FDCPA expressly provides that, to be effective, a consumer's request that a debt collector cease further communications must be in writing." Newton, 2014 WL 340414 at *5. Upon receiving Plaintiff's cease and desist letter, the Defendant stopped calling Plaintiff. (Docket Entry No. 37-3 at 32-34). Plaintiff's § 1692f claim is based upon the same telephone calls as his §§ 1692d and 1692d(5) claims. Because this conduct is addressed by §§ 1692d and 1692d(5) as discussed above, Plaintiff's § 1692f claim likewise fails.

Given that the Court concludes that Plaintiff's claim is without merit, the Defendant's contention that Plaintiff did not suffer any actual damages is moot.

Finally, Defendant contends that Plaintiff filed this claim in bad faith and that Defendant is entitled to attorneys' fees under § 1692k(a)(3). "To prevail, defendant must prove plaintiff's entire lawsuit – not just a single claim – was brought in bad faith and for the purpose of harassment." Brown v. Van Ru Credit Corp., 2015 WL 225727, at *5 (E.D. Mich. Jan. 16, 2015) (citing Adams v. Bureau of Collection Recovery, LLC, 2011 WL 3204759, at *1 (E.D. Mich. July 28, 2011)). Defendant bases its claim on Plaintiff's admission that he did not "repeatedly" tell Defendant that he could not pay. (Docket Entry No. 31-1 at p.72). Plaintiff now contends that by "repeatedly" he meant multiple times within one call, not multiple times on different occasions. Courts have "declined to award attorney's fees when a claim is 'minimally colorable' and without additional facts supporting bad faith or harassment." Brown, 2015 WL 225727, at *5 (citations omitted). See also Adams, 2011 WL 3204759 at *2.

Plaintiff has stated that his claim was made in good faith, and Defendant has not offered additional evidence of bad faith or harassment. The Court concludes that Plaintiff's claim is minimally colorable under the least sophisticated debtor standard applied to FDCPA actions. Smith v. Transworld Systems, Inc., 953 F.2d 1025, 1028 (6th Cir. 1992). Accordingly, the Court concludes that this action was not brought in bad faith or for the purpose of harassment.

For these reasons, the Court concludes that Defendant's motion for summary judgment (Docket Entry No. 29) should be granted as to Plaintiff's claims and Defendant's request for attorneys' fees should be denied.

An appropriate Order is filed herewith.

ENTERED this the 24th day of September, 2015.

WILLIAM J. HAYNES, JR.
Senior United States District Judge